UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | No. 1:18-CR-016-LY |
| | § | ECF |
| CHARLES MCALLISTER | § | |

GOVERNMENT'S RESPONSE TO
DEFENDANT'S MOTION FOR NEW TRIAL

Comes now the United States of America, by and through the United States Attorney for the Western District of Texas, and files this Response to Defendant's Motion for a New Trial.

I.
BACKGROUND/PROCEDURAL POSTURE

Defendant was charged with two counts of Wire Fraud in violation of 18 U.S.C. § 1343 and one count of Engaging in Monetary Transaction in Criminally Derived Property in violation of U.S.C. § 1957. On October 4, 2019, a jury rendered a verdict of guilty on all counts. Defendant then filed a Motion for New Trial on October 18, 2019.

II.
LEGAL STANDARD

Defendant's motion raises a single issue: that the Government improperly engaged in a burden-shifting argument that violated McAllister's substantial rights. In determining whether a prosecutor's statement constitute reversible error, the Fifth Circuit uses a two-step approach. It first considers whether the remarks were improper, and, second, whether the defendant was actually prejudiced. *United States v. Weast*, 811 F.3d 743, 732 (5th Cir. 2016). The prejudice step "sets a high bar" for the defendant and includes the following three factors: "(1) the magnitude of the prejudicial effect of the prosecutor's remarks, (2) the efficacy of any cautionary instruction by

the judge, and (3) the strength of the evidence supporting the conviction." *Id.* (internal quotation marks omitted).

## III.
## FACTS AND ARGUMENT

Counsel for the defendant, Charles McAllister, argued during his closing remarks that McAllister and others "had an honest belief of the validity of that use clause and what he could do with the metals." Transcript Defendant's Closing at p. 4-5. Counsel later described how McAllister "gets everybody together, and they go to see Joe Cain. They go over to Joe Cain's office to have a meeting." Transcript Defendant's Closing at p. 13. After the employees met with a criminal defense attorney, defense counsel argued, "So what do they do? They go back to Joe Cain's office. And, again, it's Joe Cain who says, 'We're not doing that.' Charles McAllister doesn't say that. It's the company's lawyer who says, 'We're not doing that. And, if you do that, we're going to come after you.'" Transcript Defendant's Closing at p. 15. Later, counsel stated that McAllister tried to get the employees to attend a meeting with Joe Cain. He argued, "I know Joe has a meeting scheduled this afternoon. This should give us all direction. I understand that he's reviewing a draft opinion letter and expect closure on that issue by tomorrow…This is the advice he got, ladies and gentlemen." Transcript Defendant's Closing at p. 16. Counsel continued his argument that McAllister was "trying to get advice" and "gets lawyers involved to help him—a bunch of lawyers involved to help him." Transcript Defendant's Closing at p. 18-19. Counsel then noted that McAllister accepted the advice from Cain and the other lawyers by stopping further storage of metal. Transcript Defendant's Closing at p. 16.

During rebuttal argument, counsel for the government also described the meeting with attorney Joe Cain that defendant and the employees attended in October 2012. During argument, counsel for the government stated in part that "Chad McAllister is sitting there in that same room.

**Government's Response to Motion for New Trial – Page 2**

And let me just say this: Mr. Ardoin says, 'I don't have to put on a case.' And he's right. He doesn't have to put on a case. He didn't have to bring anyone. But he could have." Transcript Government's Rebuttal at p. 9. Attorney for the McAllister objected citing "burden shifting," and the Court sustained the objection and instructed the jury to disregard the last statement. Transcript Government's Rebuttal at p. 9.

Under the first prong of the legal standard, counsel for the government's argument was not improper. McAllister's attorney specifically mentioned the meetings with Cain and other lawyers to establish that McAllister did not have the specific intent to defraud. He specifically mentions that Cain, in response to the employees' demand of disclosure, stated that "We're not going to do that." Counsel for the government, noting that McAllister did not have to put on a case, properly began his argument that McAllister could have called a witness to support his position when the burden-shifting was made and sustained.

"Commenting on a failure to call witnesses generally is not an error, unless the comment implicates the defendant's right not to testify." *United States v. Wall*, 389 F.3d 457, 474 (2003). During argument in *Wall*, the government had noted that two meeting participants "could have been called by a witness by either side." *Id.* at 463. Unlike the instant case, defense counsel in *Wall* did not object to the argument. Despite this distinction, the rebuttal argument in the instant case was proper given the argument by McAllister that Cain gave him specific legal advice about the scheme. *See also United States v. Sherriff*, 546 F.2d 604 (5th Cir. 1977)(prosecutor's comments regarding calling witnesses and subpoena power were proper when responding to defense argument that certain witnesses were not called).

Even assuming arguendo that the comment was not proper, McAllister is not entitled to a new trial. The single statement during rebuttal did not prejudice defendant after the Court issued a

curative instruction. *See United States v. Anchondo-Sandoval*, 910 F.2d 1234, 1238 (5th Cir. 1990). In asserting that the Government's rebuttal constituted improper burden shifting, McAllister relies on two cases: *United States v. Iredia*, 866 F.2d 114 (5th Cir. 1989) and *United States v. Anchondo-Sandoval*, 910 F.2d 1234 (5th Cir. 1990). Defendant's Motion for New Trial at 2–3. Neither case held that the respective defendants were entitled to a new trial, as McAllister acknowledges. *Anchondo-Sandoval*, 910 F.2d at 1238; *Iredia*, 866 F.2d at 118; Defendant's Motion for New Trial at 3 n.2.

In *Anchondo-Sandoval*, not only did the Government make two independent statements about the defendant's failure to call certain witnesses, the attorney also interjected his own opinion about the defendant's credibility. 910 F.2d at 1237–38. Despite these statements and the court's strong rebuke in dicta, it ultimately still held that the Government's conduct was not "so egregious as to rise to the level of reversible error because [the defendant's] substantial rights were not affected." *Id.* At 1238. In *Iredia*, the Government's attorney commented on the defendant's failure to call a witness three separate times before being stopped. 866 F.2d at 118. Still, the court held that the attorney's repetitive comments did not constitute reversible error. *Id.* In contrast, the Government in this case made a statement that McAllister "could have" brought a witness, though reiterated that McAllister did not have the burden of proof and was not required to put on a case. Transcript Government's Rebuttal at p. 9. The Government's single statement here falls well below the level of conduct that has not warranted a new trial. *Anchondo-Sandoval*, 910 F.2d at 1238; *Iredia*, 866 F.2d at 118.

Moreover, in both cases, the court immediately issued curative instructions for the jury to disregard any burden-shifting comments, and later issued instructions clarifying which party bore the burden of proof. *Anchondo-Sandoval*, 910 F.2d at 1238; *Iredia*, 866 F.2d at 117–18. Such

instructions are enough to erase "any doubts as to which party had the burden of proof." *Iredia*, 866 F.2d at 118.  Another court in this circuit has also dealt with similar burden shifting comments and held that a court's curative instructions were enough to mitigate any potential prejudice, as the jury is "presumed to follow a court's instructions." *United States v. Bennett*, 230 F. Supp. 3d 546, 569 (S.D. Miss. 2017) (citing *United States v. McCarty*, 36 F.3d 1349, 1355 (5th Cir. 1994)).  When McAllister's counsel objected to the Government's statement, the Court issued a proper curative instruction that the jury "disregard the last statement." Transcript Government's Rebuttal at p. 9. Given the presumption that juries follow court instructions, this curative instruction was enough to overcome any potential prejudice from the Government's statement.

In this case, McAllister alleges only one statement that could constitute burden shifting, rather than the repetitive statements made in the cases he relies on; in addition, the Court gave curative instructions and clarified the burden of proof to the jury.  McAllister has not shown why the Court's curative instruction and reassertion of the Government's burden were not enough in his case to overcome a single statement when similar instructions were enough to erase "any doubt" in the more egregious cases of *Anchondo-Sandoval* and *Iredia*. *See also United States v. Van Velkinburgh*, 342 Fed.Appx. 939 (5th Cir. 2009).

## IV.
## CONCLUSION

WHEREFORE, premises considered, the Government respectfully requests that the Court deny McAllister's Motion for a New Trial.

                                Respectfully submitted,

                                JOHN F. BASH
                                UNITED STATES ATTORNEY

                                *s/Daniel D. Guess*
                                DANIEL D. GUESS
                                Assistant United States Attorney
                                Texas State Bar No. 00789328

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been served on counsel via ECF on October 28, 2019.

                                *s/Daniel D. Guess*
                                DANIEL D. GUESS
                                Assistant United States Attorney